# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:21-CV-00129-KDB-DCK

| | |
|---|---|
| RUTT RENTAL, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ATLANTIC COAST FIRE<br>TRUCKS, LLC,<br><br>    Defendant. | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff Rutt Rental LLC's ("Rutt" or "Landlord") and Defendant Atlantic Coast Fire Truck LLC's ("Atlantic" or "Tenant") cross motions for partial summary judgment in their commercial lease dispute. (Doc. Nos. 22, 23). The Court has carefully considered these motions and the parties' briefs and exhibits. For the reasons discussed below, the Court will grant in part and deny in part Rutt's motion and grant Atlantic's motion.

The jury not the Court must decide the disputed factual issues related to whether the alleged damages caused by Atlantic's repair of fire trucks at the leased property constituted "reasonable wear and tear," considering both the lease's specific grant of permission for Tenant to only use the property as a "[e]quipment service and prep facility for fire trucks and other vehicles" as well as the Tenant's specific obligations to avoid damaging the property, including to "not use or keep any device which might overload the capacity of any floor." Rutt's motion will also be denied as to Atlantic's "failure to mitigate" and "third party damages" defenses, which raise disputed factual issues related to the amount of damages. However, the lease's "integration clause" and "non-

1

waiver" provision are fatal to Atlantic's unclean hands, waiver, ratification/consent and laches affirmative defenses, on which Rutt will be granted summary judgment.

With respect to Atlantic's motion for summary judgment on Rutt's claim for attorneys' fees, the Court agrees with Atlantic that the lease at issue is not "evidence of indebtedness" sufficient to provide a statutory basis for the award of attorney's fees under governing North Carolina law related to Rutt's claim for damages based on a failure to repair the property. In the absence of statutory authority for the award of attorney's fees, Atlantic is entitled to judgment on Rutt's claim for attorneys' fees.

## I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*, (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is

2

warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

Rutt is the owner of a commercial building located at 4718 Mountain Creek Avenue, Suite B, Denver, North Carolina (the "Property"). The Property, which has concrete driveways and floors, includes a commercial building with three garage doors and a workshop. Atlantic is in the business of repairing commercial diesel-fueled vehicles, including fire trucks. On or about January 26, 2015, Atlantic entered into a written Commercial Lease Agreement (the "Lease") with Rutt to use the Property as Atlantic's main service facility. (Doc. No. 22-2). The initial Lease term was for 5 years, from February 1, 2015, through January 31, 2020. (*Id.*). As discussed below, the parties later briefly renewed the lease from February 2020 until August 31, 2020.

The Lease listed the "Permitted Use of Premises" as "Equipment service and prep facility for fire trucks and other vehicles." (Doc. 22-2 at Section 1j). Further, the lease stated that the Landlord agreed to rent and the Tenant would use the premises "for only the Permitted Use." (*Id*. at Sections 4, 20). Moreover, Tenant was required to "continuously occupy and utilize the entire Premises in the active conduct of its business" (i.e. repairing fire trucks) during the business hours set by the Landlord. (*Id*. at Section 20).

Also regarding the suitability of the Property for Atlantic's use, Atlantic contends that Mike Rutkauskas, one of Rutt's owners, explicitly represented to Atlantic's President Steve Dill that the thickness of "the floor was sufficient to carry the load of the trucks in question." Atlantic claims that it relied on this representation in entering into the lease; however, the Lease itself contains no representation or warranty as to the thickness of the floor. To the contrary, the Lease has an "integration clause" that states:

4

> This Lease will constitute the entire agreement between the Landlord and Tenant. Any prior understanding or representation of any kind preceding the date of this Lease will not be binding on either party to this Lease except to the extent incorporated in this Lease. In particular, no warranties of the Landlord not expressed in this Lease are to be implied.

Doc. No. 22-2 at Section 108.

With respect to improvements, damage and the required condition of the Property at the end of the Lease, the Lease limited the changes the Tenant could make to the property and obligated Tenant to repair and return the Property to the Landlord in the same condition as the beginning of the Lease as follows:

> 21. The Tenant covenants that the Tenant will carry on and conduct its business from time to time carried on upon the Premises in such manner as to comply with all statutes, bylaws, rules and regulations of any federal, provincial, municipal or other competent authority and will not do anything on or in the Premises in contravention of any of them.
>
> 36(b). The Tenant will obtain written permission from the Landlord before . . . painting, wallpapering, redecorating or in any way significantly altering the appearance of the Premises . . ..
>
> 70. The Tenant covenants with the Landlord to occupy the Premises in a tenant like manner and not to permit waste. The Tenant will at all times and at is sole expense, subject to the Landlord's repair, maintain and keep the Premises, reasonable wear and tear, damage by fire, lightning, tempest, structural repairs, and repairs necessitated from hazards and perils against which the Landlord is required to insure excepted.
>
> 71. The Tenant covenants with the Landlord that the Landlord, its servants, agents and workmen may enter and view the state of repair of the Premises and that the Tenant will repair the Premises according to notice in writing received from the Landlord, subject to the Landlord's repair obligations. If the Tenant refuses or neglects to repair as soon as reasonably possible after written demand, the Landlord may, but will not be obligated to, undertake such repairs without liability to the Tenant for any loss or damage that may occur to the Tenant's merchandise, fixtures or other property or to the Tenant's business by such reason, and upon such completion, the Tenant will pay, upon demand, as Additional Rent, the Landlord's cost of making such repairs plus fifteen percent (15%) of such cost for overhead and supervision.
>
> 72. The Tenant will keep in good order, condition and repair the non- structural portions of the interior of the Premises and every part of those Premises, including

without limiting the generality of the foregoing . . . floors . . . . The Tenant will not use or keep any device which might overload the capacity of any floor . . . in the Premises or the Building….

73. The Tenant will not make or have others make alterations, additions or improvements or erect or have others erect any partitions or install or have others install any trade fixtures, exterior signs, floor covering, interior or exterior lighting, plumbing fixtures, shades, awnings, exterior decorations or make any changes to the Premises or otherwise without first obtaining the Landlord's written approval thereto, such written approval not to be unreasonably withheld in the case of alterations, additions or improvements to the interior of the Premises.

92. The Tenant covenants to surrender the Premises, at the expiration of the tenancy created in this Lease, in the same condition as the Premises were in upon delivery of possession under this Lease, reasonable wear and tear, damage by fire or the elements, and unavoidable casualty excepted . . . .

Doc. No. 22-2 at Sections 21, 36(b), 70 – 73, 92.

After entering into the lease, Atlantic conducted its business on the Property without incident until at least 2016, when Atlantic's facility manager Mark Hammill alleges that Atlantic reported to Rutt that cracks had formed in the concrete on the Property. Atlantic further alleges that Rutt's owner then inspected the cracks, represented that the concrete was sufficiently thick to support Atlantic's operations on the Property and said he would have an independent contractor inspect and repair the cracks. Unsurprisingly, Rutt disputes Atlantic's version of these events. Ultimately, no further action on the cracks was taken by either party, and Atlantic continued to use the Property as it had been doing, allegedly causing additional damage to the concrete.

In 2019, Atlantic notified Rutt that it intended to construct a new facility for its operations and hoped that construction would be completed prior to the end of the Lease period. However, Atlantic wasn't able to complete the building prior to the end of the lease term and the parties (after contentious negotiations) extended Atlantic's tenancy until August 31, 2020. In advance of the end of the extended Lease term, Rutt sent Atlantic a list of items that it believed required

6

repair or remediation before Atlantic vacated the Property. The list included oil spills inside and outside the Property and broken concrete on the Property's interior and exterior concrete pad. Also, Rutt demanded that Atlantic return the Property's office space and bathrooms to their original condition. Specifically, Rutt claims that Atlantic made modifications without permission to the office space in the northwest corner of the leased space, including changing the flooring and paint, and failed to repair damages to the bathroom walls caused when fixtures Atlantic had added were removed. Upon leaving the Property, Atlantic attempted to remove the oil from the interior concrete pad through the use of a pressure washer and a floor machine that dispensed a degreasing product. However, it made no attempts to repair or replace the areas of broken concrete on the Property's interior and exterior concrete pad, which it contends are Rutt's responsibility to repair as "reasonable wear and tear," or address the other disputed items of damage.

On April 13, 2021, Rutt filed this action in North Carolina state court seeking money damages for Atlantic's failure to satisfy its alleged obligations under the Lease to repair the damage to the Property and return it to the condition it was in at the beginning of the tenancy. The matter was timely removed to this Court on August 30, 2021. On October 3, 2022, the parties filed cross motions for partial summary judgment. Rutt moved for partial summary judgment on its claim for breach of contract and on several of Atlantic's affirmative defenses, including "failure to mitigate damages" and "damages caused by a third party," "waiver," "unclean hands," "consent/ratification" and "laches." Atlantic moved in turn for partial summary judgment on Rutt's claim for attorneys' fees. The matter is fully briefed and ripe for the Court's decision.

7

### III. DISCUSSION

A. <u>Plaintiff's Motion for Partial Summary Judgment</u>

The parties agree that their respective claims and defenses are governed by North Carolina substantive law, both under the terms of the Lease and as an action filed under the Court's diversity jurisdiction. *See* Doc. No. 22-2 at Section 23; *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941). Under North Carolina law, "[t]he heart of a contract is the intention of the parties, which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." *See Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680 (2018), *quoting*, *Gould Morris Elec. Co. v. Atl. Fire Ins. Co.*, 229 N.C. 518, 520, 50 S.E.2d 295, 297 (1948); *see also Travelers Indem. Co. of Am. v. Schwarz Properties L.L.C.*, No. 519CV00017KDBDCK, 2020 WL 564027, at *3 (W.D.N.C. Feb. 4, 2020). The plain and unambiguous language of a contract is enforceable according to those terms, *Mountain Fed. Land Bank v. First Union Nat'l Bank of North Carolina*, 98 N.C. App. 195, 200 (1990);[1] however, it is up to the trier of fact, here the jury, to determine whether and to what extent the parties have complied with their contractual obligations. *See Conleys Creek Ltd. P'ship v. Smoky Mountain Country Club Prop. Owners Ass'n, Inc.*, 255 N.C. App. 236, 250 (2017).

As described above, the Lease contains numerous rights and obligations which are both clearly stated and, under the circumstances here, in tension with each other. Specifically, Tenant is granted the right (indeed required) under the Lease to use the premises as a service facility for fire trucks and other vehicles, but is also obligated not to damage the Property, including a specific

---

[1] "Where the terms of a contractual agreement are clear and unambiguous, the courts cannot rewrite the plain meaning of the contract. In addition, when a court construes a contract, it must give ordinary words their ordinary meanings." *Anderson v. Mystic Lands, Inc.*, 275 N.C. App. 979 (2020), writ denied, review denied, 379 N.C. 145 (2021), quoting *Internet East, Inc. v. Duro Communs., Inc.*, 146 N.C. App. 401, 405 (2001).

8

prohibition on the use of "any device which might overload the capacity of any floor." Ignoring these multiple provisions, each party contends that their rights under the Lease are absolute. Atlantic argues that because it is permitted to use the Property to repair fire trucks, any damage caused to the Property from doing so is "reasonable wear and tear." On the other hand, Rutt claims that all damage caused by the fire trucks must be repaired, without regard for the permitted use.

Neither party is right. It is possible, perhaps even likely, that Atlantic's use of the Property caused both "reasonable wear and tear" from fire trucks necessarily being on the premises and damage that it was obligated to repair. Indeed, the parties vigorously dispute whether *the extent and manner* in which Atlantic serviced fire trucks on the Property[2] was within the scope of the permitted use (i.e. "reasonable wear and tear") or instead triggered Atlantic's obligation to repair and/or remediate damage. Thus, whether or not Atlantic breached the Lease contract turns on disputed factual issues, and it will be up to the jury to weigh all the provisions of the Lease and decide the complex question of whether Atlantic's use of the premises constituted, in whole or part, "reasonable wear and tear" or damage to the Property which it was obligated to repair.[3] Accordingly, Rutt's motion for partial summary judgment on its claim for breach of contract will be denied.

Also, there are material disputed facts related to Atlantic's affirmative damages defenses, "failure to mitigate damages" and "third party damages." Atlantic contends that Rutt received notice of the cracks in the floor and driveway of the Property in 2016 and should have taken action, either to fix the damage or demand that Atlantic do so, at that time rather than allow the damage

---

[2] For example, Rutt claims that Atlantic overloaded the floors with multiple fire trucks at the same time and secured the trucks on the concrete rather than using a commercial lift.
[3] In addition, as argued by Atlantic, the jury will need to decide how much of the damage to the concrete pre-existed the Lease or was caused by reasons other than Atlantic's use of the Property.

9

to continue and increase.[4] Rutt disputes Atlantic's version of events and denies that it had any duty to take any action. In the same vein, the parties disagree on the existence of pre-existing cracks in the Property's concrete, which Atlantic characterizes as "third party damages." In sum, as to both these damages issues, it is for the jury to determine the facts and award such damages as it finds from the evidence, subject to the Court's legal instructions at trial. Therefore, Rutt's motion for partial summary judgment on Atlantic's affirmative defenses related to damages will be denied.

However, the Court finds merit in Rutt's challenges to Atlantic's affirmative defenses of "waiver," "unclean hands," "consent/ratification" and "laches." As described above, all of these defenses are based on Atlantic's allegations that prior to execution of the Lease and later in 2016, Rutt's owner represented that the concrete floors and driveways on the Property were suitable for use by Atlantic for repairing fire trucks and that Rutt would be responsible as the Landlord for any damage caused by Atlantic's use of the Property for that purpose. As alleged, each of these defenses are barred either by the Lease's "integration clause" or its "non-waiver" provision.

With respect to the allegations of representations made prior to execution of the Lease, the Lease clearly reflects the parties' agreement that such representations – even if they occurred as alleged – have no effect because the Lease contains an enforceable "integration clause" that requires that any "prior understanding or representation of any kind preceding the … Lease …be … incorporated in th[e] Lease" to be binding on the parties. Doc. No. 22-2 at Section 108. *See Zinn v. Walker*, 87 N.C. 325, 333 (1987). Moreover, the Lease specifically stated, "[i]n particular, no warranties of the Landlord not expressed in this Lease are to be implied." Having agreed that

---

[4] To be clear, the alleged circumstances related to Atlantic's notice to Rutt concerning cracks in the floor and driveway in 2016 relate to damages rather than liability. As explained below, any claims of waiver of the Landlord's rights to demand repair under the Lease are specifically barred by the Lease in the absence of a written waiver, which does not exist here.

only those representations appearing in the Lease would be binding on the parties, Atlantic cannot now ground a "defense" of "unclean hands" on alleged pre-Lease representations. If such a defense were allowed, it would in practical effect improperly enforce those pre-Lease representations as part of the Lease.

Similarly, the Lease's "non-waiver" provision bars Atlantic's "waiver," "consent/ratification" and "laches" defenses, which are based on Rutt's alleged agreement in 2016 to accept responsibility for any damages to the concrete caused by Atlantic's fire truck repairs. In Section 96 of the Lease, the parties agreed that "no provision of this Lease will be deemed to have been waived by the Landlord unless a written waiver from the Landlord has first been obtained…." Atlantic has not alleged that Rutt executed a written waiver of any provision of the Lease. Accordingly, Rutt cannot be found to have "waived," "consented to" or "ratified" any conduct contrary to the terms of the Lease. In other words, the Lease clearly provides that whatever obligation, if any, Atlantic had to repair damage to the concrete is unaffected by any alleged oral representation or acceptance of responsibility by Rutt after execution of the Lease. And, as to "laches," prohibiting Rutt from pursuing a claim for damages based on the timing of the same alleged ineffective representation / agreement would have the same practical effect.[5] Therefore, the Court will grant Rutt's motion for partial summary judgment as to Atlantic's "waiver," "unclean hands," "consent/ratification" and "laches" affirmative defenses.

B.  Defendant's Motion for Partial Summary Judgment

Atlantic moves for partial summary judgment on Rutt's claim for attorneys' fees. Under North Carolina law, attorneys' fees may be awarded only where there is specific statutory authority

---

[5] As discussed above, the fact and timing of Atlantic's alleged notice to Rutt of cracks in the concrete may be relevant to the amount of recoverable damages even though it does not affect the relative liability of the parties for the property damage itself.

11

for the award. *See Stillwell Enters., Inc. v. Interstate Equip. Co.*, 300 N.C. 286, 289 (1980); *Reynolds-Douglass v. Terhark*, 2022-NCSC-74, ¶ 20, 381 N.C. 477, 487 (N.C. 2022). Thus, summary judgment is proper on a claim for attorney's fees if no statute authorizes such a recovery. *Monsanto Co. v. ARE-108 Alexander Rd., LLC*, 632 F. App'x 733, 741 (4th Cir. 2015) (affirming grant of summary judgment on attorney's fees claim where no North Carolina statute authorized recovery of attorney's fees).

In this action, Rutt claims that N.C. Gen. Stat. § 6-21.2 authorizes its requested attorneys' fees. The Court disagrees. Pursuant to Section 6-21.2, "obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness . . . shall be valid and enforceable. . ..." N.C. Gen. Stat. § 6-21.2. The North Carolina Supreme Court has defined an "evidence of indebtedness" as

> a writing which acknowledges a debt or obligation and which is executed by the party obligated thereby. More specifically, we hold that the term "evidence of indebtedness" as used in N.C.G.S. § 6-21.2 has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money.

*Stillwell*, 300 N.C. at 294. The Court finds that the Lease is plainly not "evidence of indebtedness" because it does not evidence "on its face" an enforceable obligation to pay the money to which Rutt alleges it is entitled. *See Reynolds- Douglass*, 381 N.C. at 483.

Rutt has sued Atlantic for breach of contract alleging that Atlantic breached an obligation to repair property under a commercial lease. While the Lease, like all enforceable contracts, contains obligations that might (or might not) ultimately become the basis for an award of money damages, no obligation to pay money for failing to make repairs – which might never need to be made under the Lease – appears "on the face" of the Lease. In fact, the Tenant's obligation under the Lease is to make repairs, not pay money, and a Landlord could potentially enforce that

12

obligation through an action for specific performance rather than money damages. Moreover, accepting Rutt's argument that an "implicit" debt based on a contractual obligation can support a claim for attorneys' fees under § 6–21.2, "would suggest that all contracts are therefore implicitly 'evidence of indebtedness' for damages resulting from a breach." *Monsanto*, 632 F. App'x at 740-41. Therefore, the Lease is not "evidence of indebtedness" with respect to Rutt's claim that Atlantic failed to make repairs, and summary judgment will be granted to Atlantic on Rutt's claim for attorneys' fees.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 22) is Granted in part and Denied in part as set forth above;

2. Defendant's Motion for Partial Summary Judgment (Doc. No. 23) is Granted; and

3. This case shall proceed to trial on the merits on the remaining claims in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 23, 2022

Kenneth D. Bell
United States District Judge